2020 IL App (1st) 180176-U

No. 1-18-0176

Order filed March 20, 2020

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| SOLARGENIX ENERGY, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 L 10618 |
| | ) | |
| ACCIONA SOLAR ENERGY, LLC, ACCIONA | ) | Honorable |
| ENERGIA, S.A., ACCIONA SOLAR POWER, INC., | ) | Sanjay T. Tailor, |
| ACCIONA ENERGY NORTH AMERICA | ) | Judge, Presiding. |
| CORPORATION, and ACCIONA S.A., | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

_____

JUSTICE HALL delivered the judgment of the court.
Justices Rochford and Delort concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirmed where the trial court's findings of causation and damages were not against the manifest weight of the evidence.

¶ 2    Defendants Acciona Solar Energy, LLC, Acciona Energia, S.A., Acciona Solar Power, Inc., Acciona Energy North America Corporation and Acciona S.A. (collectively "Acciona") appeal a judgment of the circuit court of Cook County following a bench trial which found in

favor of plaintiff, Solargenix Energy, LLC (Solargenix) for breach of contract, breach of fiduciary duty and tortious interference with contract, and in favor of Acciona on count IV, unjust enrichment. The judgment awarded Solargenix $98,014,549 in compensatory damages and $36,486,252 in prejudgment interest. On appeal, Acciona raises various contentions surrounding its theory that Solargenix failed to prove causation or damages.[1]  For the reasons that follow, we affirm.

¶ 3                                    BACKGROUND

¶ 4                          A.  Procedural Background

¶ 5     On March 21, 2011, Solargenix filed a complaint against Acciona seeking rescission of several joint venture agreements and $100 million in compensatory damages. Solargenix and Acciona signed a Cooperation Agreement in February 2005; an Amended and Restated Cooperation Agreement in November 2005; a Shareholders Agreement in November 2005; a Letter of Adhesion in November 2005; a Development Agreement in November 2005; and a Capital Restructuring Agreement in November 2005; collectively the joint agreements.  Acciona subsequently filed a motion to dismiss, which was granted.   Solargenix filed a five-count amended complaint on July 3, 2012, for fraudulent inducement (count I), breach of contract (count II), breach of fiduciary duty (count III), unjust enrichment (count IV), and tortious interference with the parties' Cooperation Agreement (count V).

¶ 6     In count I for fraudulent inducement against Acciona Energía, Acciona North America, and Acciona Solar Energy, Solargenix alleged that Acciona fraudulently induced it to form ASP as a joint venture so that it could obtain ownership of Solargenix's valuable proprietary solar

_____

[1] This case was fully briefed and ready for disposition on October 17, 2018.  The draft decision was first circulated to the panel on March 11, 2020.

technology, employees, and expertise while pursuing projects outside of the joint venture and causing ASP's insolvency.

¶ 7    In count II for breach of contract against Acciona Solar Energy, Acciona Energía, Acciona North America and ASP, Solargenix alleged that Acciona breached the joint venture agreements and deprived Solargenix of its bargained-for value in ASP by failing to appoint ASP employees, convene regular meetings, develop ASP domestic opportunities and secretly working with Mitsubishi to pursue new thermosolar projects. In addition to compensatory damages, Solargenix sought lost profits and punitive damages.

¶ 8    In count III for breach of fiduciary duty, Solargenix alleged that Acciona Solar Energy committed various harmful actions and breached its fiduciary duties of care, loyalty and disclosure to Solargenix, as a minority shareholder, and ASP. Solargenix sought prejudgment interest damages in addition to compensatory damages pursuant to Delaware law.

¶ 9    In count IV for unjust enrichment, Solargenix alleged that Acciona Solar Energy, Acciona Energía and Acciona S.A. misappropriated information from Solargenix about concentrating solar power (CSP) plant designs during the construction of Nevada Solar One, a CSP plant developed by Solargenix, by taking ASP proprietary documents.

¶ 10    In count V for tortious inference with contractual rights, Solargenix alleged that Acciona S.A. violated the joint venture agreements and tortiously interfered with their operation by agreeing to pursue thermosolar energy projects worldwide with Mitsubishi under Acciona Termosolar.

¶ 11    This case was previously before this court on an interlocutory appeal by defendants' Acciona, S.A. and Acciona Energia, S.A., both Spanish companies, whose motion to dismiss for

lack of personal jurisdiction was denied by the circuit court. The circuit court held that it had personal jurisdiction over the Spanish defendants, finding that they were bound by the forum selection clause because they were so closely related to the dispute that it became foreseeable that they would be bound. *Solargenix Energy, LLC v. Acciona, S.A.*, 2014 IL App (1st) 123403, ¶ 21. This court affirmed the judgment of the circuit court. *Id.*, at 54.

¶ 12    Solargenix and Acciona subsequently filed cross-motions for summary judgment on September 30, 2015. Solargenix sought summary judgment on its breach of contract claim (count II) and tortious interference with contractual rights claim (count V). Conversely, Acciona sought summary judgment on all claims filed by Solargenix.

¶ 13    On May 18, 2016, the circuit court entered a written memorandum and order in which it granted Acciona's motion for summary judgment as to the following claims in Solargenix's complaint: (a) Acciona breached the Cooperation Agreement by failing to build ASP; (b) Acciona breached the Sharerholders Agreement by not appointing a vice president of development, not causing ASP to adopt a long term incentive plan (LTIP), not holding enough board meetings, and not exploring federal loan guarantees; (c) Acciona committed fraud by not building or developing ASP; (d) rescission; and (e) punitive damages for breach of fiduciary duty. Further, on its own motion, the circuit court entered summary judgment in favor of Acciona on Solargenix's claim that Acciona breached the Cooperation Agreement by developing CSP projects in Spain. The court otherwise denied the parties' cross-motions for summary judgment.

¶ 14    On August 1, 2016, Solargenix filed a motion for leave to file a second amended complaint to allege facts that would allow it to pierce Acciona's corporate veil under its breach

of fiduciary duty claims, arguing that Acciona Solar Energy, as a signatory to the joint agreements, was a shell company and the alter-ego of its parent companies, Acciona S.A. and Acciona Energia. The circuit court granted the motion and the case proceeded to trial on Solargenix's remaining claims.

¶ 15                                        B.  Factual Background

¶ 16     The following findings of fact were adduced by the circuit court in a 93-page written memorandum and order following a five-week bench trial.

¶ 17     Solargenix is a North Carolina limited liability company founded by brothers John and Jeff Myles in 1997, and they indirectly hold a majority interest in Solargenix. Defendant Acciona S.A., based in Spain, is the parent company of the Acciona group of companies. Acciona Solar Energy, LLC is a wholly owned subsidiary of Acciona Energy North America Corporation, which is in turn, a wholly owned subsidiary of Acciona Energia. The North American Companies are Delaware entities.

¶ 18     In February 2005, Solargenix and Acciona signed a Cooperation Agreement to form a Delaware-based joint company, Solargenix Energy Inc., which was later renamed Acciona Solar Power, Inc. (ASP), to invest in, develop, engineer, manage, and operate utility-scale concentrating solar power (CSP) plants throughout the world. Acciona loaned ASP $13 million and had the option of converting the $13 million loan into a 55% equity stake in Nevada Solar One. The February 2005 agreement also gave Acciona the right to purchase a 55% share in ASP for an additional $13 million. Prior to forming ASP, Acciona had no experience in developing CSP projects.

¶ 19    The parties agreed to pursue CSP opportunities exclusively through ASP, the joint company, outside of China and Spain, and for third-party collaboration within Spain. ASP had "first-mover" advantage in the marketplace, having revived the CSP industry by developing Nevada Solar One, the first utility-scale CSP plant in 17 years anywhere in the world.

¶ 20    On November 30, 2005, Solargenix and Acciona executed the joint agreements.  Pursuant to the joint agreements, Acciona purchased 55% of ASP's stock in exchange for forgiveness of the $13 million loan, and Acciona took over ownership and financing for Nevada Solar One in exchange for granting ASP the exclusive right to complete its development.

¶ 21    The joint agreements gave Solargenix 45% ownership in ASP while Acciona owned 55%.  The joint agreements also designated Illinois as the venue for the parties' choice of law provision.

¶ 22    Additionally, the agreements required Acciona to appoint three directors to ASP's board and Solargenix was required to appoint two directors, and Acciona was required to designate ASP's Chairman and CEO.  Under the Shareholder Agreement, Acciona had a "call option," under which it had the right to purchase Solargenix's 45% share in ASP for $40 million until November 30, 2009.  The Shareholder Agreement also contained a "deadlock" provision which allowed a shareholder to issue a buy/sell notice to the other shareholder offering to purchase the other's stock for a fixed price, to which the other shareholder must respond within 30 days by either purchasing the notifying shareholder's shares or selling all of its shares. The party initiating the process was required to take any counteroffer, thus discouraging a lowball first offer.  If Solargenix elected to buy out Acciona, it could do so by paying 10% of the purchase price and providing a note for the remainder, payable over three years.

¶ 23    Section IV(A) of the Cooperation Agreement stated that the development of Nevada Solar One was one of the primary focuses of ASP and its principals until the project was brought to commercial operation.  Additionally, section V(A) stated that the opportunity to invest in future thermosolar power generation projects, provide development, engineering, operations, and management services to such projects were deemed corporate opportunities of ASP and were not to be pursued by either party outside of ASP except with the unanimous consent of ASP's board of directors.  Acciona agreed to be bound by the Cooperation Agreement in the Letter of Adhesion.  Likewise, one of the principal purposes of ASP was to accrue sufficient available cash to invest in and pursue ownership opportunities in CSP projects that ASP developed.  If ASP did not have sufficient cash to invest in the CSP projects it developed, the shareholders would have the right of first refusal to invest in the opportunity.

¶ 24    However, ASP did not develop any CSP projects after its formation.  Various issues arose between Solargenix and Acciona. At ASP's very first board meeting in February 2006, Acciona requested the name change to ASP in order to brand as a "self-standing company."  Nevada Solar One became operational in June 2007, and a dedication ceremony was held in February 2008.  However, ASP employees and Solargenix objected to the press materials Acciona prepared for the event because they contained only a single reference to ASP and instead promoted Acciona.  Solargenix introduced the head of Acciona to representatives of Mitsubishi and Mubadala, whom it had invited to bring business to ASP.  Both Mitsubishi and Mubadala were interested in CSP projects.

¶ 25    Thereafter, beginning in March 2008, Acciona met with representatives from Mitsubishi without Solargenix. Additionally, Acciona had email discussions with Mitsubishi about

developing CSP projects and signed a collaboration agreement with Mitsubishi on July 13, 2009, to develop CSP projects throughout the world through Acciona's CSP company based in Spain, Acciona Termosolar. Solargenix became aware of the partnership on the eve of its public announcement by Acciona in July 2009; however, Acciona misrepresented to Solargenix that the agreement did not include CSP projects.

¶ 26    Acciona and Mitsubishi submitted government proposals to various countries for joint CSP projects and assigned roles to third parties that the joint agreement with Solargenix guaranteed to ASP, such as investing, engineering, and operations and maintenance providers.

¶ 27    For example, between October and November 2009, Acciona met with Australian government officials more than 20 times to pursue a CSP project and decided to pursue it prior to mentioning it to ASP or Solargenix.  It was first raised to ASP at a board meeting in November 2009, where it recommended that ASP serve as the project's technical service provider instead of the project's developer or owner, for which it would only receive a small fee. At the same meeting, ASP's chairman stated that there was a time urgency to the Australian project, and though the board scheduled monthly meetings, the chairman failed to call another board meeting for six months.  Further, during that six-month period, the chairman refused to provide ASP or Solargenix with any information regarding the Australian CSP project, and in a December 2009 email to Acciona, the chairman indicated that Acciona "had to think about whether we permit [ASP] to enter the [Australian CSP project] as a partner or block it on the Board."

¶ 28    Between mid-November 2009 and June 2010, Acciona pursued the Australian project with Mitsubishi, including signing a letter of intent for the Australian government to develop, construct and operate the proposed CSP plants.  In February 2010, Acciona obtained a letter of

intent from Mitsubishi, financing letters from various banks, an expression of interest from Acciona Infrastructure to provide engineering and construction services for the project and two 42-page preliminary engineering reports, all related to the CSP projects in Australia. ASP and Solargenix were not involved in, or informed of, these matters; nor did subsequent proposals submitted by Acciona to the Australian government in February 2010 mention ASP. Acciona did not seek or receive consent from the ASP board to submit such proposals for CSP development projects in Australia at any time between November 2009 and May 2010. This was despite Solargenix's frequent requests for any information related to Australian CSP projects.

¶ 29    ASP and Solargenix first learned of Acciona's involvement in the Australian CSP project in March 2010 when a competitor of ASP told an ASP employee. Further, Solargenix first learned that Acciona submitted proposals for the Australian CSP project in May 2010, when the Australian government publicly announced that the Acciona and Mitsubishi venture was one of eight applicants that was shortlisted. Solargenix sent Acciona a letter that its actions in Australia violated the Cooperation Agreement and again requested information concerning Acciona's work on the Australian CSP project. Acciona sent documentation related to its proposals for the Australian CSP project on June 4, 2010, however, it never provided financial models for the project.

¶ 30    In August 2010 the ASP board voted to pursue the Australian project as a development opportunity, but the chairman then demanded that Solargenix contribute capital to ASP to provide equity funding for the Australian project, despite the fact that ASP had adequate cash on hand to develop the Australian CSP project.

¶ 31    At trial, Acciona's most senior official admitted that its actions with Mitsubishi were outside of the ASP agreement, and ASP's CFO and COO admitted that Acciona had taken steps with respect to the Australian project that were exclusively reserved for ASP.

¶ 32    On September 10, 2010, Acciona invoked the deadlock provision of the joint agreements. In late September 2010, ASP learned that the performance modeling that Acciona prepared for the Australian CSP project was "poorly prepared" and could not be used.

¶ 33    The final proposal for the Australian CSP project was due on December 15, 2010, however, due to the buy/sell notice and the shortage of time until the final proposal was due, in October 2010, ASP voted to no longer participate in the Australian CSP project. ASP's CFO and COO concluded that, but for ASP's interference, Acciona could have developed a CSP project in Australia.

¶ 34    Similar sequences of events occurred for proposed CSP projects in Morocco, India, Chile, South Africa, and Oman.

¶ 35    Additionally, Acciona failed to pursue various domestic CSP opportunities with ASP or Solargenix in 2010, such as Google, Pacific Gas & Electric, Fort Irwin and Nevada Solar Two. Acciona specifically advised ASP not to pursue a domestic partnership opportunity to construct Nevada Solar Two during a board meeting while pursuing such opportunity with Mitsubishi.

¶ 36    Moreover, as early as August 2008, Acciona discussed letting Mitsubishi into Acciona Termosolar and transferring the potential value there and "parking" ASP, acknowledging that it would be confronted with a lawsuit by Solargenix, "which could be justified to some extent." However, Acciona did not exercise the call option, and caused ASP to never have adequate leadership - it appointed an ASP chairman who worked full-time for Acciona, hired only one

full-time CEO during ASP's five-year existence, who started three years after ASP's formation and stayed only 10 months; and hired a CFO who became ASP's only corporate officer. Additionally, ASP never had its own CSP development team.

¶ 37    Acciona developed two separate business plans for ASP, one to market it to Mitsubishi and other investors (investor business plan) and one for the ASP board (ASP business plan). The investor business plan showed ASP's substantial growth potential, while the ASP business plan projected only limited growth. ASP was not involved in the development of the investor business plan to keep the information from Solargenix.

¶ 38    With respect to Solargenix's unjust enrichment claim (count IV), the circuit court noted that one aspect of it turned on whether Acciona misappropriated information from Solargenix about CSP plant design during Nevada Solar One's construction. Emails from ASP's senior vice president of engineering (and a legacy Solargenix employee) expressed concern that Acciona was taking and using documents without permission and that might not be adequate for Acciona's projects and also that contractors were copying and stealing ASP information.

¶ 39    On February 18, 2011, Solargenix sold its 45% interest in ASP to Acciona for $11.5 million, partially because ASP's only revenue stream at that time was an operation and maintenance contract with Nevada Solar One, which was owned by Acciona.

¶ 40    One week later, Acciona announced that Mitsubishi purchased a 15% interest in Acciona Termosolar. Acciona Termosolar was a worldwide CSP development company.

¶ 41                              C.  Expert Testimony

¶ 42                          1. Solargenix's Expert Witnesses

¶ 43    Solargenix presented two experts at trial to testify as to ASP's valuation. Scott Sklar testified as an expert in renewable energy sources, the CSP industry and photovoltaics. He stated that ASP's value was not affected by the 2010 rise of photovoltaics in the renewable energy market because CSP maintained an essential place in the renewable energy industry worldwide; Nevada Solar One performed well and marked a "rebirth" for the CSP industry and investment.

¶ 44    Solargenix's damages expert, Mark Hosfield, testified that ASP was worth $493 million as of December 31, 2009. Hosfield used a discounted cash flow analysis to calculate the valuation by forecasting ASP's future net revenue from 2010 to 2020, then discounting that net revenue to present value as of December 31, 2009. He estimated the size of the potential future market between 2010 and 2020 for all CSP projects outside of Spain (in megawatts) by averaging three growth predictions from third-party sources along with a perpetual 41% growth rate he testified was supported by the industry's historical data.

¶ 45    To estimate ASP's market share, Hosfield assumed that ASP would have captured half of the market share that Abengoa, a similar Spanish developer and contractor had between 2007 and 2010.  Hosfield made assumptions about how much net revenue the development of potential projects would generate and used an 8.19% discount rate to calculate the present value of that net revenue as of December 31, 2009, which resulted in a $493 million total valuation.

¶ 46    Comparing the December 31, 2009, $493 million ASP valuation figure to the $11.5 million Solargenix received for its 45% buyout on February 18, 2011, (discounted back to 2009), Hosfield concluded that ASP lost $211.3 million in value over 14 months as a result of Acciona's conduct.

¶ 47    Hosfield also opined that Solargenix lost an additional $31 million in forfeited investment returns and concluded that, "but for" Acciona's conduct, ASP would have taken a 2.5% ownership interest in every CSP project developed worldwide after December 31, 2009. Hosfield stated that Solargenix would have earned a 7% return on each project in which it invested.

¶ 48                              2. Acciona's Expert Testimony

¶ 49    Acciona's expert, Dr. Lauren Stiroh, testified that she investigated Solargenix's damages claims to determine if Acciona's actions had any effect on ASP's value as of February 18, 2011. She stated that Hosfield did not establish a basis for damages because he did not account for adverse market and competitive conditions in the solar thermal market after December 31, 2009.

¶ 50    Stiroh testified that December 31, 2009, was not the proper date to use in calculating damages because it did not directly correlate to Acciona's alleged impactful actions. She further stated that various external forces adversely affected the value of every CSP company by early 2011, including the rise in competition from photovoltaics, the global recession and political events in the U.S. and around the world.

¶ 51    Stiroh found that Hosfield's valuation methodology was not a proper damages model because it did not address what could have been proper investment opportunities for ASP. She concluded that Hosfield's model used unreasonable assumptions and her corrections of Hosfield's assumptions reduced ASP's value as of December 31, 2009, from $493 million to $35 million and accordingly lowered Solargenix's resulting damages from $211 million to $2.2 million.

¶ 52    Stiroh testified that Hosfield's 8.19% discount rate was unreasonably low because it did not address the risk associated with forecasting the growth of the CSP industry. She stated that a

discount rate ranging from 21% to 40% was more appropriate because CSP developers did not have a solid track record in completing projects.

¶ 53    Stiroh next addressed Hosfield's "but-for" model, stating that he used "the wrong approach" because he started with an expected value in 2009 and compared it to a 2011 outcome without linking the estimated change in value to any specific Acciona conduct.  Stiroh opined that Hosfield's model improperly assumed that Solargenix's damages would remain the same regardless of Acciona's specific conduct.

¶ 54                              D.  Motion for Directed Finding

¶ 55    At the close of Solargenix's case-in-chief, the circuit court granted Acciona's motion for directed verdict on count I, fraudulent inducement.

¶ 56                              E.  Circuit Court's Judgment

¶ 57    After the parties filed closing briefs, and after taking the matter under advisement, the circuit court entered a written memorandum opinion and order on August 9, 2017, on Solargenix's remaining claims, counts II through V.

¶ 58    The court, noting that it heard evidence over a five-week period in September and October 2016, found that "credible evidence establishe[d] that the defendants, at every turn, pursued international CSP opportunities outside the joint company, and 'parked' the joint company, preventing it from pursuing CSP opportunities in the United States. Predictably, the joint company failed, and the parties went their separate ways."

¶ 59    The court further found that defendants' theory of the case, namely that:  "(i) they were just 'prospecting' for CSP opportunities, not pursuing them; (ii) the joint company failed because the plaintiff and its legacy employees were difficult partners; and (iii) the plaintiff [could] not

establish damages" – was neither credible nor supported by law. In entering judgment for Solargenix, the circuit court specifically found that defendants' repeated breaches of contract and fiduciary duty, and tortious interference with contract, proximately caused the value of the joint company to "wither away."

¶ 60    However, the circuit court concluded that Solargenix failed to prove its theft claim (unjust enrichment, count IV) because Solargenix did not identify with sufficient specificity what documents or information were taken by Acciona. The court found that Solargenix did not introduce any evidence to identify what Nevada Solar One proprietary technology, drawings or site designs were stolen, nor did it offer sufficient evidence to establish that Acciona actually used any misappropriated information or drawings in Spain or anywhere else. Thus, the circuit court found in favor of Acciona on Solargenix's unjust enrichment claim.

¶ 61                    1. Acciona's Breach of the Cooperation Agreement (count II)

¶ 62    The circuit court initially noted that to establish breach of contract, Solargenix had to prove the existence of a valid and enforceable contract, its performance, breach by Acciona and resultant injury to Solargenix. The court found that the Cooperation Agreement was a valid and enforceable contract, that Solargenix performed under the contract by contributing all of its CSP assets and personnel to ASP and by conveying to Acciona full ownership of Nevada Solar One. The court noted that sections V(A) and (B) of the Cooperation Agreement and the Letter of Adhesion imposed an obligation on Acciona not to pursue opportunities to develop or own CSP projects or to provide certain services for CSP projects without first offering such opportunities to ASP.

¶ 63    The court found that Acciona pursued numerous opportunities to both develop and invest in CSP projects outside of Spain without ASP in Australia, India, Morocco, Chile, South African and Oman, in breach of section V of the Cooperation Agreement. The court further found that Acciona's approach to the Cooperation Agreement was designed for ASP's failure, and that its breaches proximately caused Solargenix to be damaged.

¶ 64                2. Acciona's Breach of Fiduciary Duty (count III)

¶ 65    The circuit court noted that Delaware law applied to Solargenix's breach of fiduciary duty claim, and to succeed, Solargenix must establish that a fiduciary duty existed and that Acciona breached that duty.  While Acciona argued that a majority shareholder owed a fiduciary duty to the corporation and minority shareholder only to the extent that it dominated the board of directors and controlled the corporation, the circuit court found that under well-established Delaware law, a shareholder also owed a fiduciary duty if it owned a majority interest in the corporation.  The court therefore concluded that Acciona owed a fiduciary duty to ASP and Solargenix. With respect to Acciona's argument that Solargenix's breach of fiduciary duty claim was duplicative of its breach of contract claim, the circuit court found that the claim was broader in scope, depended on additional facts and had an independent basis.  Acciona's fiduciary duty was not defined by contract, but rather by its role as a majority shareholder of ASP.

¶ 66    The circuit court further found that Acciona had a fiduciary duty to promote ASP, namely a duty to do everything in its power to help develop ASP, and that it breached such duty by "parking" ASP and not working to grow it while simultaneously developing its own international CSP business and pursuing CSP opportunities with Mitsubishi outside of Spain. Acciona did not market ASP as a self-standing company, did not meaningfully pursue existing CSP opportunities

for ASP, failed to hire a full-time CEO for much of ASP's existence, and never hired any experienced development personnel for ASP. The court noted that, meanwhile, Acciona used Nevada Solar One to market Acciona Energia and Acciona Termosolar, worked to grow Acciona Termosolar into a worldwide CSP company, and focused on pursuing CSP opportunities around the world with Mitsubishi through Acciona Termosolar instead of ASP, thus promoting its interests at the expense of ASP and Solargenix.

¶ 67    The court also found that Acciona breached its fiduciary duties by acting contrary to Solargenix's and ASP's best interest, including by creating two separate business plans and keeping the plan with higher growth projections hidden from Solargenix and ASP. Acciona also used ASP's eventual CEO to market Solargenix's interest in ASP to Mitsubishi. While noting that Acciona was permitted to act in its own interest in making decisions as a shareholder, including its exit strategy from ASP, Acciona breached its fiduciary duty by colluding with ASP's CEO to devise the separate business plans, by failing to disclose CSP opportunities to ASP and Solargenix, and by actively concealing its pursuit of those opportunities. The circuit court concluded that Acciona's affirmative defense of the business judgment rule was rebutted by Solargenix's proof that Acciona breached its fiduciary duties of good faith and loyalty by repeatedly acting in its own self-interest, and that Acciona failed to prove that its conduct was entirely fair. Accordingly, the circuit court found Acciona liable for breach of fiduciary duty (count III).

¶ 68    Solargenix also sought to pierce Acciona's corporate veil to hold the Acciona parent companies liable for breach of fiduciary duty. In reviewing this claim, the circuit court noted that Acciona Solar Energy had no employees, never had a board meeting and that it never made

any substantive business decisions regarding ASP. All decisions were made in Spain. The circuit court found that the corporate veil was pierced, and the Spanish defendants were found liable for breach of fiduciary duty.

¶ 69        3. Acciona's Tortious Interference with the Cooperation Agreement (count V)

¶ 70    On count V, the circuit court found that Acciona actively encouraged Acciona Solar Energy to breach the Cooperation Agreement by negotiating a partnership with Mitsubishi that expressly targeted CSP and by pursuing CSP opportunities with Mitsubishi. The court also found that Solargenix was damaged by Acciona's tortious conduct, and that Acciona was not privileged to interfere with the Cooperation Agreement under Illinois law. The circuit court again noted that by pursuing for itself opportunities reserved exclusively for ASP, Acciona necessarily intended to harm ASP and Solargenix. The circuit court concluded that Acciona was liable for tortious interference with contractual relations (count V).

¶ 71        4. Unjust Enrichment (count IV)

¶ 72    The circuit court reiterated its earlier determination that Solargenix's unjust enrichment claims failed for lack of sufficient proof. The court noted that Solargenix's unjust enrichment claim to recoup the value of Nevada Solar One and the Spanish CSP plants failed because Acciona bargained for those assets and rights pursuant to a series of "heavily" negotiated contracts that were valid and enforceable. The court further noted ASP never held any patents for any of its intellectual property that was used in any CSP plant, including Acciona's Spanish plants.

¶ 73        5. Solargenix's Lost Value Damages

¶ 74  The circuit court began the damages calculations by noting that Solargenix's damages were based in large part on the loss in value of its investment in ASP. The court noted that while Acciona's expert, Stiroh, determined that ASP was of relatively nominal value, Acciona itself valued ASP in July 2008 between $274 million and $787 million, and an Acciona executive contended that the most balanced valuation was one in the middle, $525 million. Additionally, the investment banker that Solargenix hired to help sell its 45% interest in ASP to Mitsubishi valued ASP at $526 million as of November 2009. The court found that Solargenix's expert, Hosfield, did not adequately account for the risk associated with forecasting the growth of the CSP industry with his valuation model for ASP, and determined that ASP's fair market value as of December 31, 2009, was $239,606,454. The court then determined that Solargenix's 45% interest in ASP was worth $107,822,904, and that it suffered $98,002,954 in lost value damages.

¶ 75  Contrary to Acciona's assertions, the circuit court concluded that Hosfield's damages model, based on a theory of lost business value, satisfied Solargenix's burden to prove its damages to a reasonable certainty, even though the circuit court did not use Hosfield's figures or complete damages model to ultimately calculate damages. The court then awarded compensatory damages in the amount of $98,180,050 to Solargenix on counts II, III, and V.

¶ 76                    6. Solargenix's Lost Investment Return Damages

¶ 77  In calculating Solargenix's lost investment return damages, the circuit court found that Hosfield's method of calculation satisfied the reasonable certainty requirement, although it changed some of the variables. The circuit court ultimately awarded Solargenix lost investment damages in the amount of $16,757,967 on counts II, III and V.

¶ 78                              7. Punitive Damages

¶ 79 The circuit court found that a punitive damages award against Acciona was warranted because it willfully interfered with the Cooperation Agreement and wantonly disregarded the rights of Solargenix. The court further found that Acciona's conduct went "above and beyond the intentional and unjustified interference with contract necessary to establish a tortious interference with contractual rights; it deliberately pursued Mitsubishi as a partner for Acciona rather than ASP, and then it intentionally and repeatedly breached the Cooperation Agreement by pursuing numerous CSP opportunities around the world with Mitsubishi. Additionally, Acciona kept information concerning potential CSP projects, as well as the information contained in the investor business plan, from ASP and Solargenix. The court then awarded punitive damages to Solargenix in the amount of $25,000,000.

¶ 80                                    8. Causation

¶ 81 In response to Acciona's argument that Solargenix failed to prove that its damages were proximately caused by any breach by Acciona, the circuit court found that Solargenix proved that Acciona's pursuit of CSP projects outside of ASP between December 31, 2009, and February 2011 was a substantial factor in causing the decline in ASP's value and Solargenix's damages. The circuit court determined that but for Acciona's conduct, ASP's business would have grown, and its value would have increased significantly, as 2010 saw more ground-breaking in the CSP market than any other year, and again noted that Acciona itself pursued numerous CSP projects during that time. The court rejected Acciona's argument that Solargenix had to prove loss causation, finding Solargenix's expert testimony on the CSP market during that time to be persuasive. The circuit court concluded that although the rise of competitive technology affected the value of ASP, and consequently the amount of Solargenix's damages, it

did not undermine the fact that Solargenix's damages were proximately caused by Acciona's breaches.

¶ 82    The circuit court rejected Acciona's remaining arguments and affirmative defenses, and entered judgment in favor of Solargenix on counts II, III, and V of the second amended complaint, with corresponding damages in the amount of $114,938,017, representing lost value damages of $98,180,050 and lost investment return damages of $15,757,967.  The court also granted Solargenix a $25 million punitive damages award. Judgment was entered in favor of Acciona on count IV.

¶ 83                    F. Post-Judgment Proceedings

¶ 84    Acciona filed a motion for rehearing, vacation and/or modification of the judgment, and Solargenix moved for an award of prejudgment interest on the damages award for breach of fiduciary duty.

¶ 85    In its motion, Acciona argued that the circuit court erred in calculating the lost value damages and it sought to vacate the punitive damages award.  The circuit court subsequently vacated the $25 million punitive damages award, finding that Acciona had an "alter ego" legal defense to Solargenix's claim which was not forfeited by failure to raise it sooner.  The court however, rejected Acciona's argument that the lost value damages were incorrectly calculated.

¶ 86    Solargenix moved for an award of prejudgment interest in the amount of $48,078,729.96 on its breach of fiduciary duty judgment as a matter of right under Delaware law.

¶ 87    In a written order on December 22, 2017, the circuit court reduced Solargenix's lost value damages on counts II, III and V to $81,256,582; awarded Solargenix prejudgment interest in the amount of $36,486,252; vacated the judgment in count II against ASP; and vacated the $25

million punitive damages award on count V. No change was made to the lost investment return damages award. A total damages award of $133,500,801 was entered in favor of Solargenix.

¶ 88    Acciona filed its timely notice of appeal on January 19, 2018.

¶ 89    Solargenix also filed a cross-appeal on January 26, 2018, which it moved to voluntarily dismiss on August 1, 2018. We granted Solargenix's motion to dismiss its cross-appeal on October 23, 2018.

¶ 90                                    ANALYSIS

¶ 91    On appeal, Acciona raises several issues on appeal related to causation and damages. Acciona contends that the circuit court erred in entering judgment in favor of Solargenix because: (1) Solargenix failed to prove damages with reasonable certainty; (2) the circuit court's damages theory was "untethered to any viable claim for breach of contract or breach of fiduciary duty;" (3) Solargenix failed to prove proximate causation; and (4) other portions of the judgment fail on independent grounds. Acciona contends that the judgment should be reversed or that it should receive a new trial on causation and damages.

¶ 92    We will examine each of Acciona's arguments related to causation and damages in turn.

¶ 93                        A.  Proof and Calculation of Damages

¶ 94    Acciona first contends that Solargenix failed to prove its damages with reasonable certainty, arguing that the "new business rule" barred damages, and that the assumptions which underlie the circuit court's valuation model were speculative.

¶ 95    In a related argument, Acciona contends that the circuit court's damages theory was unconnected to any viable claim for breach of contract or fiduciary duty. It argues that: (1) the court's valuation theory assumed that ASP was not injured prior to year-end 2009; (2) Acciona

had no fiduciary duty to grow or promote ASP; and (3) its unsuccessful pursuit of CSP projects in 2010 could not have resulted in a $180 million decline in ASP's value.

¶ 96    Initially we note that a reviewing court will not disturb the damages assessed by a trial court sitting without a jury unless its judgment was against the manifest weight of the evidence. *Med+Plus Neck and Back Pain Center, S.C. v. Noffsinger*, 311 Ill. App. 3d 853, 856-57 (2000). A trial court's assessment of damages is against the manifest weight of the evidence when it ignored the evidence or used the wrong measure of damages. *Id.* at 857.

¶ 97    The basic theory of damages in a breach of contract action requires that a plaintiff "establish an actual loss or measurable damages resulting from the breach in order to recover." *In re Illinois Bell Telephone Link-Up II*, 2013 IL App (1st) 113349, ¶ 19, (quoting *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 149 (2005)).  A plaintiff's failure to prove damages entitles the defendant to judgment as a matter of law. *Westlake Financial Group, Inc. v. CDH-Delnor Health System*, 2015 IL App (2d) 140589, ¶ 39. The proper measure of damages is the amount of money necessary to place the plaintiff in a position as if the contract had been performed. *In re Illinois Bell*, 2013 IL App (1st) 113349, ¶ 19.  In proving damages, the burden is on the plaintiff to establish a reasonable basis for computing damages. *Kirkpatrick v. Strosberg*, 335 Ill. App. 3d 119, 130 (2008).  Thus, damages must be proved with reasonable certainty and cannot be based on conjecture or speculation. *Id.* However, absolute certainty with regard to damages is not required. *Id.*

¶ 98    Damages are speculative when uncertainty exists as to the fact of their existence as opposed to the amount of damages. *Westlake Financial Group*, 2015 IL App (2d) 140589, ¶ 51. Lost profits by their nature cannot be calculated with mathematical precision and therefore do

not have to be proven with absolute certainty; instead, the evidence need only provide a reasonable basis for the calculation of damages. *Id*.

¶ 99     Here, the circuit court entered judgment in favor of Solargenix for breach of contract (count II), breach of fiduciary duty (count III), and tortious interference with contractual rights (count V), and assessed a total damages award of $133,500,801:  $81,256,582 for lost value damages, $14,757,967 for lost investment return damages and $36,486,252 in prejudgment interest.  The court specifically found that the majority of Solargenix's damages were based in large part on the loss in value of its investment in ASP due to Acciona's breaches, and specifically found that the testimony of Solargenix's damages expert, Hosfield, reasonably provided a basis for the calculation of damages.  Additionally, the circuit court provided a very detailed formula for its damages calculation, accepting parts of Hosfield's calculations and valuation model, and rejecting others, while determining more reasonable multipliers and factors. The circuit court specifically found that the lost value damages was calculated based on the valuation placed on ASP by Acciona itself in July 2008, and ASP's fair market value as of December 31, 2009.  The court then calculated the value of Solargenix's 45% of that market value and the difference accounted for the lost value damages.  We cannot say that the circuit court's assessment of damages was against the manifest weight of the evidence.

¶ 100   Acciona's reliance on the "new business rule" is misplaced.  Illinois courts have applied the "new business rule" in some contract or business tort cases where a plaintiff claims damages resulting from the loss of a new business or an unrealized business opportunity. *McIntyre v. Balagani*, 2019 IL App (3d) 140543, ¶ 114. This rule precludes expert witnesses from speculating about possible lost profits in such cases where there is no historical data to

demonstrate a likelihood of future profits. *Id*. Courts applying this rule allow recovery for "profits lost due to a business interruption or tortious interference with a contract," but they require that the business must have been established before the interruption so that the evidence of lost profits is not speculative. *Id*.

¶ 101 The "new business rule" does not govern the determination of damages in this case. It is clear that ASP was established in 2005, thus it was not a new business at the time of Acciona's breaches. Here, Solargenix sought, and was awarded, damages for lost value of its investment in ASP and lost investment return in ASP. That the catalyst for such damages was lost CSP opportunities due to Acciona's intentional actions and breaches does not bring the damages calculation under the purview of the "new business rule," and we reject Acciona's argument on that basis.

¶ 102 Similarly, Acciona's contention that the circuit court's damages theory was "untethered to any viable claim for breach of contract or breach of fiduciary duty" is without merit.

¶ 103 To succeed on a claim for breach of contract, a plaintiff must plead and prove the existence of a contract, the performance of its conditions by the plaintiff, a breach by the defendant and damages as a result of the breach. *Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 376 Ill. App. 3d 1006, 1014 (2007).

¶ 104 The evidence supports, and more specifically, Acciona does not contest, the existence of valid and enforceable contracts with Solargenix. Nor does Acciona contest that Solargenix performed its obligations under the joint agreements. The circuit court very explicitly detailed its findings of Acciona's breach of contract in its lengthy written memorandum opinion, and further found specifically that Acciona's breach was intentional and willful. The evidence

clearly supports the circuit court's determination that Acciona violated section V of the Cooperation Agreement by pursuing for itself CSP opportunities worldwide without presenting such opportunities to ASP. Moreover, as noted above, the evidence supports the circuit court's conclusion that Solargenix suffered measurable damage as a result of Acciona's breach of contract.

¶ 105    Likewise, Acciona's claim that it did not breach its fiduciary duty to Solargenix is without merit.

¶ 106    In matters relating to a company's breach of fiduciary duty, Illinois courts apply the substantive law of the state of incorporation of that company. *Howerton v. Prudential Insurance Company of America*, 2012 IL App (1st) 110154, ¶ 33.   A claim for breach of fiduciary duty requires proof of two elements: (1) that a fiduciary duty existed and (2) that the defendant breached that duty. *Beard Research, Inc. v. Kates*, 8 A.3d 573, 601 (2010).   The supreme court of Delaware has held that a shareholder owes a fiduciary duty only if it owns a majority interest in or exercises control over the business affairs of the corporation. *Kahn v. Lynch Communication Systems, Inc.*, 338 A. 2d 1110, 1113-14 (1994).   Here, it is undisputed that Acciona had 55% ownership of ASP while Solargenix had 45% ownership, thus, it was the majority shareholder and owed a fiduciary duty to Solargenix and ASP.   Under Delaware law, a majority shareholder is charged with an unyielding fiduciary duty to protect the interests of the corporation and to act in the best interests of the minority shareholders. See *Harman v. Masoneilan International, Inc.*, 442 A. 2d 487, 492 (1982).   The triads of fiduciary duty are good faith, loyalty, and due care.  See *Cede & Co. v. Technicolor, Inc.*, 354 A. 2d 345, 361 (1993).

¶ 107   Turning to whether Acciona breached its fiduciary duty to Solargenix, the evidence is clear.  Almost from the outset, Acciona undermined the existence of ASP, never fully developed ASP, did not present or pursue any CSP opportunities with ASP while developing its own CSP opportunities including seeking new business partners while using Solargenix's technology which it acquired through Nevada Solar One. Acciona even went so far as to generate two sets of business plans, one to use in courting new business partnerships for its CSP business and one provided to ASP and Solargenix which undervalued ASP.  Acciona breached its fiduciary duty to Solargenix.

¶ 108   We conclude that the evidence supports the circuit court's conclusions that Acciona breached the Cooperation Agreement and its fiduciary duty to Solargenix and ASP.  Such conclusions are not against the manifest weight of the evidence.  *Wildman, Harrold, Allen and Dixon v. Gaylord*, 317 Ill. App.3d 590, 599 (2000).  Accordingly, it follows then that the circuit court's damages award was connected to viable claims of breach of contract and breach of fiduciary duty.

¶ 109                    B.  Proof of Proximate Causation

¶ 110   Nevertheless, Acciona contends that Solargenix failed to prove proximate causation for its breach of contract claim. Acciona argues that the circuit court erred in "excusing" plaintiff's proof of loss causation and in finding that its conduct was a substantial factor in causing ASP's decline in value.  This argument is without merit.

¶ 111   While it is true that our supreme court has held that in order to recover for lost profits, it must be shown with reasonable degree of certainty that defendant's breach of contract caused a specific portion of lost profits (*Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill. 2d

306, 316 (1987)), there is nothing in the record to suggest that the circuit court awarded damages to Solargenix based on lost profits or on the projection of future profits.

¶ 112   As stated above, the circuit court awarded damages solely based on Solargenix's lost value and lost investment return based on Acciona's breaches. Here, the circuit court specifically found that but for Acciona's conduct, ASP's business would have grown and its value would have increased significantly, noting that ASP had developed and successfully operated the first utility-scale CSP plant built since 1990, and had the first-mover advantage, which would have enabled it to achieve substantial growth. In regards to Acciona's argument that Solargenix was required to prove that the drop in value of ASP was caused by its misconduct, the court found that while outside market factors certainly affected the value of ASP, and correspondingly the amount of Solargenix's damages, it did not "undermine the fact that Solargenix's damages were proximately caused by Acciona's breaches."  We find that the circuit court's determination was not against the manifest weight of the evidence.  *Fox v. Heimann*, 375 Ill. App.3d 35, 46 (2007).

¶ 113                              C.  Other Portions of the Judgment

¶ 114   Finally, Acciona contends that the circuit court's judgment fails on other, independent grounds, namely:  (1) the court erred in awarding lost profits to Solargenix; (2) the court erred in awarding prejudgment interest to Solargenix; and (3) the finding that Acciona tortiously interfered with the Cooperation Agreement should be reversed.  We find these arguments to be without merit.

¶ 115   First, nothing in the record supports Acciona's contention that the circuit court awarded Solargenix damages for lost profits; instead, the circuit court's damages award was based on lost value and lost investment return.

¶ 116   Next, the court did not err in awarding prejudgment interest to Solargenix.   Under Delaware law, prejudgment interest is awarded as a matter of right and is awarded from the date payment is due. *Beard Research*, 8 A.3d at 620.

¶ 117   Nor will we reverse the circuit court's finding that Acciona tortiously interfered with the Cooperation Agreement between Solargenix and Acciona Solar Energy. The elements of a tortious interference with contract claim are: (1) a valid and enforceable contract; (2) defendant's awareness of the contract; (3) defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach of the contract; and (5) damages. *Koehler v. Packer Group, Inc.*, 2015 IL App (1st) 142767, ¶ 42.

¶ 118   The circuit court found that Acciona actively encouraged Acciona Solar Energy to breach the agreement by negotiating a partnership with Mitsubishi that expressly focused on CSP and by pursuing CSP opportunities with Mitsubishi. The court also noted Acciona's intentional actions of pursuing CSP opportunities for itself in violation of the Cooperation Agreement to support its finding of tortious interference with a contract.   The circuit court's finding was not against the manifest weight of the evidence. *Fox*, 375 Ill. App.3d at 46.

¶ 119                                   CONCLUSION

¶ 120   For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 121   Affirmed.